# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

STAR HARBOR CAPITAL, LLC,

        Plaintiff,

    vs.

WENLAMBO TWO LIMITED,
HMSRV, LLC,
and ROBERT SHAVELL,

        Defendant.

Civil Action No. 1:25-CV-10070-MJJ

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS

## INTRODUCTION

Through a single investment of cryptocurrency, Robert Shavell and Wenlambo turned Star Harbor's $20,000 into more than $14 million.  Through this lawsuit, Star Harbor seeks to recover additional sums from Shavell and Wenlambo unrelated to the appreciation in Star Harbor's cryptocurrency, sums which neither Shavell nor Wenlambo ever promised Star Harbor it would receive.  At the core of Star Harbor's case is the allegation that prior to its investment, the Defendants promised Star Harbor that it would receive all staking rewards and airdrop proceeds, which are additional distributions of cryptocurrencies occasionally provided to the holder of a cryptocurrency.  Star Harbor's inability to identify specific communications in which any Defendant made specific representations regarding the investment or came to an agreement with Star Harbor regarding staking rewards and airdrop proceeds is fatal to Star Harbor's case.

Star Harbor's shotgun pleading strategy relies on a morass of mutually inconsistent facts.  But even if one assumes they are all true, Star Harbor's claims still fail:

- Star Harbor has failed to plead securities fraud (**Count III**), common law fraud (**Count IV**) and its fraud-based Chapter 93A claim (**Count IX**), with particularity.

- Star Harbor's contract claims—breach of contract (**Count I**), breach of the implied duty of good faith and fair dealing (**Count VI**), and promissory estoppel (**Count VII**)— fail because Star Harbor does not allege a meeting of the minds between Star Harbor and any Defendant about the purported contract's material terms.

- Star Harbor's claim for breach of fiduciary duty (**Count II**) fares no better, because Defendants do not owe a fiduciary duty to Star Harbor.

- Star Harbor's conversion claim (**Count V**) fails because Massachusetts law does not recognize conversion of intangible assets, such as cryptocurrencies.

- The intra-company conspiracy doctrine bars Star Harbor's civil conspiracy claim (**Count VII**) because all the alleged co-conspirators are agents of Wenlambo.

- Star Harbor's constructive trust (**Count X**) and resulting trust (**Count XI**) claims fail because they are remedies, not causes of action.

The Court should dismiss the Complaint with prejudice.

### FACTUAL BACKGROUND

Wenlambo is a company that, among other things, invests in cryptocurrencies. (Am. Compl. ¶ 9, 12.) Robert Shavell is a shareholder in Wenlambo. (*Id.* ¶ 11.) HMSRSV is a limited liability company that serves as a Director of Wenlambo. (*Id.* ¶ 10.) Star Harbor is a single-member LLC ultimately controlled by Andrew Sudbury, which Sudbury used as the vehicle for an investment in Wenlambo. (*Id.* ¶ 8, 20.)

Luna, pluralized as Luna Tokens, is a cryptocurrency issued by the company Terraform Labs. (Am. Compl. ¶ 13.) The holders of digital assets like Luna Tokens benefit from their ownership in a few different ways. First, the price of the digital asset itself can increase. (*Id.* ¶ 34.) Second, the holder of some digital assets can choose to "stake" the digital asset, that is, using the asset to validate other transactions on the asset's blockchain in exchange for rewards. (*Id.* ¶ 30.) Third, cryptocurrency companies may decide to provide extra amounts of digital assets to those who already own the asset via a process known as an "airdrop." (*Id.* ¶ 33.)

In March 2020, Star Harbor provided Wenlambo with $20,000 to purchase Luna Tokens. (Am. Compl. ¶¶ 21-22, 26.) Star Harbor alleges two pre-purchase communications from Shavell, both of which related to the amount of Luna Tokens available for purchase, the timing of the purchase, and the 18-month "lock-up" period, after which Star Harbor would be able to sell its Luna Tokens. (*Id.* ¶ 19.) Neither communication discussed the distribution of "staking rewards"

2

or the proceeds from "airdrops," the two mechanisms for distributing additional digital assets that are the focus of Star Harbor's Complaint. (*Id.* ¶¶ 19, 30, 33.)

In less than two years, Star Harbor's $20,000 investment in Luna Tokens grew to more than $14 million. (Am. Compl. ¶ 37.) In January 2022, following the significant appreciation in the price of Luna Tokens, Star Harbor requested Wenlambo sell Star Harbor's Luna Tokens and distribute the sale proceeds to Star Harbor. (*Id.* ¶ 35.) From January through May 2022, Wenlambo processed seven distributions to Star Harbor, representing the gain from Star Harbor's investment in Luna Tokens. (*Id.* ¶ 37.) Star Harbor now claims that, in addition to profiting from the Luna Tokens' 700-fold appreciation, it should also be given the staking rewards and airdrop proceeds related to Wenlambo's investment of those Luna Tokens, even though Wenlambo never promised and Star Harbor never bargained to receive either. (*See, e.g.*, *id.* ¶ 46.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a complaint for failure to state a claim unless, after ignoring all "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action," the complaint includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955 (2007)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1955).

Courts hold plaintiffs pleading securities fraud to an even higher standard. The Public Securities Litigation Reform Act ("PSLRA") "requires a plaintiff alleging a misleading statement or omission to 'specify each statement alleged to have been misleading [and] the reason or reasons

why the statement is misleading.'" *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 30 (1st Cir. 2012) (quoting 15 U.S.C. § 78u–4(b)(1)).  "[T]he plaintiff must [also] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2).  In addition, "plaintiffs alleging securities fraud must also meet the Rule 9(b) standard for pleading fraud with particularity." *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008).  This exacting standard requires the plaintiff to "allege the time, place, and content of the alleged misrepresentations with specificity." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 193–94 (1st Cir. 1999).

## ARGUMENT[1]

I.    **Star Harbor does not plead a violation of Section 10(b) and Rule 10b-5 (Count III) with particularity and has not plausibly alleged a purchase or sale of a security.**

A.    **Star Harbor does not plead material misrepresentations regarding staking rewards or airdrop proceeds with particularity.**

The gist of Star Harbor's securities fraud claim is that Defendants induced Star Harbor to purchase Luna Tokens based on the representation that Star Harbor would retain the staking rewards and airdrop proceeds associated with the tokens it purchased.  (Am. Compl. ¶ 26.)  This claim fails because Star Harbor did not plead with particularity that **any** Defendant made **any** representation to Star Harbor about the ultimate ownership of the staking rewards and airdrop proceeds before Star Harbor purchased the Luna Tokens.  The Complaint's allegations, largely based on unattributed communications from "others within Wenlambo" or the unidentified "other founder of Wenlambo," stand in stark contrast to Rule 9(b)'s exacting standard.

Star Harbor identifies only two specific statements allegedly made before Star Harbor purchased Luna Tokens on May 29, 2020.  (Am. Compl. ¶ 19.)  First, the Complaint alleges that

---

[1] This Memorandum groups Star Harbor's claims conceptually, rather than following the Complaint's scattershot order.

on May 18, 2020, Defendant Shavell wrote to Sudbury "we may have like $20K avail - i am not sure. checking with David but will need to act fast. remember lockup is 18months." (*Id.*) Second, the Complaint alleges that on May 28, 2020, Defendant Shavell wrote to Sudbury "fyi: let me know if you want in on this. wires will need to happen tomorrow i think as we wire Terra next week. it would go to wenlambo two BVI and we'd sign a payment direction letter. keep in mind, 18 month lock." (*Id.*) Neither statement mentions the staking rewards or airdrop proceeds that are the crux of Star Harbor's securities fraud claims. As Star Harbor has failed to allege how these prepurchase statements misleadingly described future ownership of staking rewards and airdrop proceeds, they cannot support Star Harbor's securities fraud claim. *See In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 43 (1st Cir. 2017) (complaint did not meet particularity standard where allegations "do not go to how the defendants' statements . . . were knowingly or recklessly misleading at the time they were made").

The Complaint's remaining allegations about staking rewards and airdrop proceeds are too vague to support a securities fraud claim. First, Star Harbor alleges "Shavell and [unidentified] others within Wenlambo" represented to Star Harbor that it "would receive all proceeds, entitlements, and rewards associated with or resulting from any investment . . . in Wenlambo." (Am. Compl. ¶ 23; *see also id.* ¶¶ 26.) Next, Star Harbor alleges "Shavell and the other founder of Wenlambo" represented that Star Harbor "would receive the entire value of the Luna Tokens and all associated staking rewards and airdrops corresponding to each Member or Partner's percentage of ownership in Wenlambo." (*Id.* ¶ 32.) Finally, Star Harbor alleges it "had numerous discussions with Wenlambo's principals regarding the principal Luna Tokens sold as well as the associated staking rewards and airdrop sales." (*Id.* ¶ 43.) None of these allegations describe when, where, or via what medium the alleged statements were made. *Cf. OrbusNeich Med. Co., BVI v.*

*Bos. Sci. Corp.*, 694 F. Supp. 2d 106, 118 (D. Mass. 2010) (complaint failing to specify time and place of alleged misrepresentations did not meet Rule 9(b) standard). The Complaint outlines these communications in only the most general terms and fails to allege specifically what the Defendants represented to Star Harbor or why these representations were false when made. This is legally inadequate. *See The Roxbury/S. End Tenants' Council, Inc. v. Cornerstone Corp.*, 573 F. Supp. 2d 359, 368 (D. Mass. 2008) (Rule 9(b) standard not met where complaint failed to specifically allege "what conduct was fraudulent [and] why the conduct was fraudulent").

Similarly, the Complaint's vague allegations that "others within Wenlambo" made statements to Star Harbor about staking reward and airdrop proceed distribution are too indistinct to support a securities fraud claim. (Am. Compl. ¶¶ 23, 24, 26, 31, 32, 43, 45, 47.) Not only do such allegations fail to allege the "time, place, and content of the alleged false representation[s]," they do not even identify the speaker. *Beram v. Ceaco, Inc.*, 219 F. Supp. 3d 274, 282 (D. Mass. 2016) (complaint that "[did] not state what fraudulent misrepresentations were made, when, where, or *by whom*" failed to meet Rule 9(b) pleading standard) (emphasis added). Star Harbor's failure to identify the speaker of the alleged misrepresentations is particularly problematic here, as Star Harbor has brought securities fraud claims against multiple defendants. *See Rick v. Profit Mgmt. Assocs., Inc.*, 241 F. Supp. 3d 215, 224 (D. Mass. 2017) ("where there are multiple defendants [in a fraud action], the specific role of each must be alleged").

## B. The alleged omissions are not actionable because they do not render any affirmative statements misleading.

Star Harbor's allegation that Defendants omitted material information regarding the distribution of staking rewards and airdrop proceeds is also deficient. (Am. Compl. ¶¶ 24, 31.) The Supreme Court has made clear that "§ 10(b) and Rule 10b–5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563

U.S. 27, 44, 131 S. Ct. 1309, 1321 (2011). Instead, omissions are only actionable as securities fraud if they "render[] affirmative statements made [by the defendant] misleading." *Zhou v. Desktop Metal, Inc.*, 120 F.4th 278, 292 (1st Cir. 2024) (quoting *Macquarie Infrastructure Corporation v. Moab Partners, L.P.*, 601 U.S. 257, 265, 144 S. Ct. 885, 892 (2024)).

As discussed above, Star Harbor failed to identify with particularity any affirmative statement regarding the distribution of staking rewards and airdrop proceeds any Defendant made before Star Harbor purchased Luna Tokens. *See supra*, Section I.A. This is fatal to Star Harbor's Complaint. As the First Circuit has explained, the purpose of § 10(b) and Rule 10b-5(b)'s prohibition on material omissions is to ensure that affirmative statements are not misleading, not to require the disclosure of facts—even material facts. *Thant v. Karyopharm Therapeutics Inc.*, 43 F.4th 214, 223 (1st Cir. 2022) (no obligation "to disclose all information that would be interesting to potential investors") (quotation omitted). Accordingly, omitting information about the distribution of staking rewards or airdrop proceeds from the parties' pre-purchase communications cannot have been "so incomplete as to mislead" Star Harbor because Defendants never once mentioned staking rewards or airdrop proceeds before Star Harbor made its purchase. *Hill v. Gozani*, 638 F.3d 40, 57 (1st Cir. 2011) (quoting *Backman v. Polaroid Corp.*, 910 F.2d 10, 16 (1st Cir. 1990) (en banc)); *see also Coyne v. Metabolix, Inc.*, 943 F. Supp. 2d 259, 271 (D. Mass. 2013) (duty to disclose information regarding product defects only triggered after defendant made affirmative statements regarding product quality). Star Harbor has therefore failed to plead any material omissions within the meaning of Section 10(b) and Rule 10b-5.

### C. Star Harbor has failed to plead with particularity that any Defendant acted with the requisite scienter for securities fraud.

The PSLRA requires Star Harbor to "state with particularity facts giving rise to a strong inference that the defendant acted with" scienter. 15 U.S.C. § 78u-4(b)(2)(A). In this context,

scienter means "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319, 127 S. Ct. 2499, 2507 (2007) (quotation omitted). To plead scienter with particularity, the First Circuit generally requires a complaint to "contain[] clear allegations of admissions, internal records or witnessed discussions suggesting that at the time they made the statements claimed to be misleading, the defendant officers were aware that they were withholding vital information or at least were warned by others that this was so." *In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d 21, 31 (1st Cir. 2012).

Star Harbor has failed to allege any facts giving rise to any inference—much less a strong inference—that any Defendant intended to "deceive, manipulate, or defraud" Star Harbor by failing to discuss staking rewards or airdrop proceeds prior to Star Harbor's purchase of Luna Tokens. *Tellabs, Inc.*, 551 U.S. at 319, 127 S. Ct. at 2507. Specifically, Star Harbor has not identified any "admissions, internal records or witnessed discussions" indicating that, at the time of investment, any Defendant intended to retain the staking rewards or airdrops associated with Star Harbor's Luna Tokens. *See In re Bos. Sci. Corp. Sec. Litig.*, 686 F.3d at 31.[2]

## II.    Star Harbor has failed to plead its common law fraud claim (Count IV) with particularity.

Star Harbor's common law fraud claim suffers from the same defect as its securities fraud claim: Star Harbor has failed to meet the Rule 9(b) pleading standard. The Complaint alleges all the Defendants tricked Star Harbor into purchasing Luna Tokens by falsely claiming that (1)

---

[2] Star Harbor has also failed to allege in more than a conclusory manner that the Luna Tokens, staking rewards, and airdrop proceeds constitute securities, a necessary element of its securities fraud claim. Courts have variously classified cryptocurrencies as currencies, commodities, or property, with the classification depending on particular aspects of the cryptocurrency in question. *See United States v. Harmon*, 474 F. Supp. 3d 76, 89 (D.D.C. 2020) (currency); *Commodity Futures Trading Comm'n v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y.) (currency), *adhered to on denial of reconsideration*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018); *United States v. Coinbase, Inc.*, No. 17-CV-01431-JSC, 2017 WL 3035164, at *1 (N.D. Cal. July 18, 2017) (property). Star Harbor has provided no allegations regarding the character of Luna Tokens that, even if taken as true, would establish the token as a security.

Wenlambo was a general partnership and that Star Harbor would receive a pro rata share of Wenlambo's profits and losses, including from the purchase of Luna Tokens; (2) Wenlambo would not charge management fees; and (3) Star Harbor would receive all staking rewards and airdrop proceeds associated with the Luna Tokens.  (Am. Compl. ¶ 73.)  Star Harbor does not, however, allege with particularity a single pre-investment communication in which any Defendant made any representation regarding these issues.  In fact, Star Harbor does not even allege which of the three Defendants made any of the alleged misrepresentations.  *See Rick*, 241 F. Supp. 3d at 224 ("where there are multiple defendants [in a fraud action], the specific role of each must be alleged").  By failing to "state what fraudulent misrepresentations were made, when, where, or by whom," Star Harbor has not met the Rule 9(b) pleading standard for common law fraud, and the Court should dismiss its fraud claim.[3]  *Beram*, 219 F. Supp. 3d at 282.

### III.    Star Harbor's Chapter 93A claim (Count IX) sounds in fraud and fails to meet Rule 9(b)'s pleading standard.

Star Harbor's Chapter 93A claim sounds in fraud and therefore must meet the Rule 9(b) pleading standard.  "Rule 9(b)'s requirements apply to . . . 'associated claims,' . . . 'where the core allegations effectively charge fraud.'"  *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 21–22 (1st Cir. 2017) (quoting *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009)).  Accordingly, "[w]here a Chapter 93A action sounds in fraud, a plaintiff must plead such fraud with particularity."  *Santos v. SANYO Mfg. Corp.*, No. CIV.A. 12-11452-RGS, 2013 WL 1868268, at *6 (D. Mass. May 3, 2013).

---

[3] Star Harbor cannot even decide exactly what the Defendants allegedly represented.  A representation that Star Harbor alone would be entitled to "all attendant profits and proceeds associated" with the purchase of Luna Tokens, (Am. Compl. ¶ 73(f)), is inconsistent with a representation that Star Harbor would receive a "pro rata share" of Wenlambo's profits and losses from purchases such as the purchase of the Luna Tokens.  (Am. Coml. ¶ 73(c-d).)

Star Harbor bases its Chapter 93A claim on five different allegedly "unfair or deceptive acts or practices," each of which sounds in fraud:

a. Deceiving Plaintiff as to the terms and conditions of its investment with Wenlambo;

b. Deceiving Plaintiff as to its partnership interest in Wenlambo as a result of its investment and/or unfairly depriving Plaintiff of same;

c. Deceiving Plaintiff as to its right of possession, ownership, control, or dominion over the investment principal, i.e., Luna tokens, and/or unfairly depriving Plaintiff of same;

d. Deceiving Plaintiff as to its right of possession, ownership, control, or dominion over the investment income, e.g., staking rewards and airdrops, and/or unfairly depriving Plaintiff of same; and

e. Deceiving Plaintiff as to its exemption from "management fees" and other surcharges and/or unfairly imposing the same on Plaintiff.

(Am. Compl. ¶ 100(a-e).)  These allegations just restate Star Harbor's fraud claim.  (*Compare id.*, *with* Am. Compl. ¶ 73.)  As such, they "effectively charge fraud" and must comply with Rule 9(b).  *See Nizhoni Health Sys. LLC v. Netsmart Techs., Inc.*, No. 22-CV-11212-DJC, 2023 WL 3657386, at *10 (D. Mass. May 25, 2023) (Rule 9(b) applied to Chapter 93A claim where "[t]he allegations in the complaint undergirding [the 93A] claim are the same as those undergirding [plaintiff's] negligent misrepresentation claim").

As with Star Harbor's allegations of common law and statutory fraud, Star Harbor's Chapter 93A allegations fail to specify *who* communicated with Star Harbor, precisely *what* was promised, *when* and *where* the communications took place, and *why* the communications were fraudulent.  They fail to state a claim.  *See supra* Sections I.A, II; *see also Valley Children's Hosp. v. Athenahealth, Inc.*, No. 22-CV-10689-DJC, 2023 WL 6065800, at *4 (D. Mass. Sept. 18, 2023) (Chapter 93A claim based on allegedly fraudulent misrepresentations dismissed due to failure to meet Rule 9(b) pleading standards).

**IV.    Star Harbor's contract claims fail because Star Harbor has not alleged the existence of a contract with any Defendant.**

    **A.    Star Harbor's breach of contract claim (Count I) fails because Star Harbor has not alleged a meeting of the minds regarding the material terms of the purported contract.**

To adequately state a claim for breach of contract "[i]t is not enough to allege, in a conclusory fashion, that the facts demonstrate a breach of contract." *Vieira v. First Am. Title Ins. Co.*, 668 F. Supp. 2d 282, 288 (D. Mass. 2009).  Instead, the plaintiff must allege "with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof." *Doyle v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir. 1996).  Where, as here, the plaintiff has neither alleged nor attached to its complaint a written contract, the plaintiff must at least allege facts that would establish an "'agreement between the parties on the material terms of that contract, and . . . [the parties'] present intention to be bound by that agreement.'" *In re LP & D, Inc.*, 622 B.R. 473, 483 (D. Mass. 2020) (quoting *Situation Mgmt. Sys., Inc. v. Malouf, Inc.*, 430 Mass. 875, 878, 724 N.E.2d 699, 703 (2000)).  This meeting of the minds "occurs when there is a manifestation of mutual assent to the exchange and consideration." *McCormick v. Lischynsky*, 539 F. Supp. 3d 225, 236 (D. Mass. 2021) (meeting of minds where party detailed proposed division of assets, asked other party if "she was 'okay' with such a proposal," and other party replied "'I am in agreement.'")

Star Harbor's scant allegations about the parties' conduct in forming the alleged contract do not establish a meeting of the minds about the contract's terms.  Star Harbor alleges that by paying $20,000, Star Harbor accepted Defendants' offer of (1) "[a] general partnership interest in Wenlambo," (2) "a pro rata share of Wenlambo's net profits" without any "management fees [or] other surcharges," (3) "[a]n ownership interest in" and "[a]ll attendant proceeds and profits associated with  . . . [the] Luna tokens, including, but not limited to, all staking rewards and

airdrops."  (Am. Comp. ¶ 57–58.) Without a written contract memorializing these terms, these allegations cannot establish a valid offer and acceptance because Star Harbor fails to allege which Defendant made the purported offer or when it was made.  *See Doyle*, 103 F.3d at 194 (dismissal warranted where complaint did not allege "even when [the contract] was formed").  Star Harbor cannot rely on the communications identified in Paragraph 19 of the Amended Complaint, the only pre-investment communications Star Harbor alleges with any Defendant, to establish offer and acceptance because those communications concern only the amount and timing of the investment and do not discuss the other aspects of the offer as alleged in Paragraph 57.  *See I & R Mech., Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455, 817 N.E.2d 799, 802 (2004) ("meeting of the minds" must show agreement "on *the same proposition* on *the same terms* at *the same time*") (emphasis added).  Without factual allegations plausibly suggesting that Star Harbor and any Defendant came to an agreement as to the material terms of the purported bargain, Star Harbor's breach of contract claim fails.

## B.    Star Harbor's failure to allege a meeting of the minds also defeats its promissory estoppel claim (Count VIII).

The failure to adequately allege a meeting of the minds as to the essential terms of the purported contract also defeats Star Harbor's promissory estoppel claim.  Promissory estoppel is a type of contract action that allows a plaintiff to establish the element of consideration by showing that he acted or failed to act based on the defendant's promise, which the defendant reasonably expected to induce the plaintiff's action or inaction.  *See Neuhoff v. Marvin Lumber & Cedar Co.*, 370 F.3d 197, 203–04 (1st Cir. 2004) ("in Massachusetts what is elsewhere called promissory estoppel is nothing but a contract absent consideration").  As such "the party bringing [a promissory estoppel] action must prove all the necessary elements of a contract other than consideration." *Rhode Island Hosp. Tr. Nat. Bank v. Varadian*, 419 Mass. 841, 850, 647 N.E.2d

1174, 1179 (1995). But the problem with Star Harbor's contract claims is not lack of consideration; it is that Star Harbor has failed to adequately allege a meeting of the minds of the key terms of the purported contract. *See supra* Section IV.A.

### C.    Without a contract, Defendants cannot, as a matter of law, have breached the implied covenant of good faith and fair dealing (Count VI).

Star Harbor's failure to allege a contract is fatal to its claim for breach of the implied covenant of good faith and fair dealing. "In order to demonstrate a claim for the breach of the covenant of good faith and fair dealing, 'the plaintiff must show that there existed an enforceable contract between the two parties.'" *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005) (quoting *Learning Express, Inc. v. Ray–Matt Enters., Inc.*, 74 F.Supp.2d 79, 84 (1999). As discussed above, Star Harbor has not adequately alleged a valid and enforceable contract between Star Harbor and any Defendant. "[W]ithout a contract, there is no covenant to be breached," and the Court should therefore dismiss this claim. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 230 (1st Cir. 2005).

## V.    Star Harbor's breach of fiduciary duty claim (Count II) fails because no Defendant owed Star Harbor a duty.

### A.    Star Harbor has not adequately alleged any Defendant owed it a duty.

Star Harbor has not alleged a fiduciary relationship between Star Harbor and any Defendant. Generally, "a fiduciary duty exists when one reposes faith, confidence, and trust in another's judgment and advice." *Baker v. Wilmer Cutler Pickering Hale & Dorr LLP,* 81 N.E.3d 782, 791-92 (Mass. App. Ct. 2017) (internal citation omitted). "However, a business relationship does not become a general fiduciary relationship merely because an uninformed customer reposes trust in [another.]" *Mansor v. JPMorgan Chase Bank, N.A.,* 183 F.Supp.3d 250, 274 (D. Mass. 2016) (citation omitted). Moreover, no fiduciary duty exists when a financial entity merely facilitates a transaction between parties. *Patsos v. First Albany Corp.,* 741 N.E.2d 841, 851 (Mass.

2001) ("only . . . those . . . who have the ability to, and in fact do, make most if not all of the investment decisions for their customers" owe fiduciary duties to their customers). That is what happened here.

Star Harbor alleged Wenlambo executed a single purchase of Luna Tokens on Star Harbor's behalf on or about May 29, 2020. (Am. Compl. ¶ 26.) Star Harbor also alleges that Wenlambo later, at Star Harbor's request, sold Star Harbor's Luna Tokens in seven transactions and sent Star Harbor the proceeds. (Am. Compl. ¶¶ 35, 37.) The Complaint does not allege that Star Harbor reposed "faith, confidence, and trust" in any Defendant's advice. These facts do not suggest that any Defendant owed Star Harbor a fiduciary duty. *See, e.g., Patsos*, 741 N.E. 2d at 851 ("a business relationship between a broker and customer does not become a general fiduciary relationship merely because an uninformed customer reposes trust in a broker").

**B.      Star Harbor has not adequately alleged it formed a partnership with any Defendant.**

The documents Star Harbor alleges as evidence Star Harbor was "a Member or Partner of Wenlambo" do not establish a partnership between Star Harbor and any Defendant because the Complaint expressly states Star Harbor's investment goal was to reap the rewards of its own investment in Wenlambo, not to share equally in Wenlambo's profits, losses, and management. (*See, e.g.*, Am. Compl. ¶ 23.) To demonstrate that it formed a partnership with the Defendants, Star Harbor must show "(1) an agreement manifesting an intent to associate in a partnership; (2) a sharing of profits and losses; and (3) participation by the parties in control and management of the partnership business." *Von Papen v. Rubman*, 18 F. Supp. 3d 77, 84–85 (D. Mass. 2014) (citing *Fenton v. Bryan*, 33 Mass.App.Ct. 688, 690–691, 604 N.E.2d 56, 58 (1992)). Every requirement element is missing from the Complaint.

### 1.    No Defendants intended to associate with Star Harbor in a partnership.

Star Harbor's Complaint does not identify a single written or oral partnership agreement between Star Harbor and any Defendant.  Star Harbor's theory is that Defendants intended to create a partnership with Star Harbor by accepting funds from Star Harbor for the purchase of Luna Tokens and identifying Star Harbor as a partner on certain "tax filings and associated documents…." (Am. Compl. ¶¶ 24–38.)  But Massachusetts courts reject this formalistic approach to partnership formation.  *See Gemini Invs., Inc. v. Ches-Mont Disposal, LLC*, 629 F. Supp. 2d 163, 167 (D. Mass. 2009) (To form a partnership "'[i]t is not enough that the parties referred to each other as partners'") (quoting *Martin v. Stone*, 332 Mass. 540, 546, 126 N.E.2d 196, 200 (1955);[4] *In re Inbar*, 121 B.R. 132, 135–36 (Bankr. D. Mass. 1990) ("financial statement . . . showing [party] with a 50 per cent partnership interest in a real estate" insufficient to establish partnership).

Star Harbor does not allege it received shares of Wenlambo in exchange for its $20,000 investment or, in fact, that Star Harbor ever received anything other than the profits associated with its investment.  (Am. Compl. ¶¶ 26–27.)  Although Star Harbor claims to have "tax filings and associated documents"—which it does not attach to its Complaint despite their alleged importance—identifying Star Harbor as a partner in Wenlambo, it does not allege those documents describe the partnership terms.  (Am. Compl. ¶ 28.)  In fact, Star Harbor never alleges what the partnership terms are or the supposed partnership's profit and loss allocation or management.

---

[4] As an illustration, consider the recent proliferation of the non-equity partner tier in law firms.  It is increasingly common for law firms to give the title of "Partner" to attorneys whose compensation is not tied to the firm's profits and who are not liable for the firm's losses.  Even though the law firm holds these non-equity partners out to the world as "Partners," and even though they may receive their income via K-1 as opposed to W-2, they are nevertheless not partners in the legal sense because the firm does not intend to associate with them as such.

**2.    No Defendant intended to share in Star Harbor's profits and losses.**

Star Harbor has not plausibly alleged any Defendant intended to associate with Star Harbor in a partnership by sharing profits or losses with Star Harbor.  Wenlambo purchased a discrete amount of Luna Tokens on Star Harbor's behalf and later returned all of Star Harbor's principal, plus appreciation.  (Am. Compl. ¶¶ 26, 37.)  The Complaint does not allege Star Harbor expected to share in the profits or losses from Luna Tokens purchased by any other purported Wenlambo "partners" or any of Wenlambo's other business ventures.  *In re Inbar*, 121 B.R. at 135 (partnership "require[s] an intent to conduct a business over a substantial period of time, rather than joining together as joint venturers in a simple, limited investment") (quotation omitted).  To the contrary, Star Harbor alleges it transacted with Wenlambo based on an understanding that Star Harbor would be entitled "to receive all proceeds, entitlements, and rewards associated with or resulting from **any investment Sudbury or his designed [sic] made in Wenlambo**."  (Am. Compl. ¶ 26, emphasis added.)

The only plausible reading of Star Harbor's Complaint is that Star Harbor expected to be the sole beneficiary of any profits derived from the specific tranche of Luna Tokens Wenlambo purchased on Star Harbor's behalf.  Star Harbor does not allege it intended to share its own investment gains to offset the losses of other putative "partners,'" or, if another "partner's" investment did well, Star Harbor would be entitled to share the proceeds.  Put another way, the Complaint does not identify any agreement to share in Wenlambo's losses "above and beyond the amounts [Star Harbor] invested therein."  *Garvey v. Lemle*, No. 045180BLS, 2005 WL 2009552, at *10 (Mass. Super. July 29, 2005).  This describes a single-investor model, not a partnership where profits and losses are communally shared.

### 3. Star Harbor did not share in the control or management of any organization.

Star Harbor has not plausibly alleged any shared control or management of the putative "partnership." The Complaint states Star Harbor transferred $20,000 to Wenlambo, which Wenlambo used to purchase Luna Tokens on behalf of Star Harbor. (Am. Compl. ¶ 26.) Wenlambo then staked the Luna Tokens. (Am. Compl. ¶ 29.) Neither Star Harbor nor any Defendant exercised any control or management over Star Harbor's Luna Tokens as they appreciated to over $14 million in value. (*See* Am. Compl. ¶ 34.) Nor was Star Harbor or any Defendant required to actively manage the Luna Tokens to receive staking rewards or airdrops. As alleged, staking Star Harbor's Luna Tokens required only one action, after which the Luna Tokens generated staking rewards automatically. (Am. Compl. ¶¶ 29–30.) Airdrops are free distributions of tokens, which do not require any input on the part of the token's owner. (Am. Compl. ¶ 33.) These facts do not establish a partnership. *See Garvey*, 2005 WL 2009552, at *10 (passive investment insufficient to support alleged partnership).

## VI. Star Harbor's conversion claim (Count V) fails because it alleges conversion of an intangible asset.

Defendants cannot, as a matter of law, have converted Star Harbor's Luna Tokens because cryptocurrency is an intangible asset. "[P]ursuant to Massachusetts law, conversion claims do not extend to intangible property." *Struzziero v. Lifetouch Nat'l Sch. Studios, Inc.*, 677 F. Supp. 2d 350, 354 (D. Mass. 2009). While Massachusetts courts have not specifically spoken to whether cryptocurrencies are intangible assets, courts in other jurisdictions consider cryptocurrencies intangible. *See Matter of James v. IFINEX Inc.*, 2019 NY Slip Op 32454(U), ¶ 22 (New York Sup. Ct.) (cryptocurrency "tether's role as a medium of exchange could place it within the meaning of a 'good,' albeit an intangible one"). Likewise, a growing body of secondary authority considers Bitcoin an intangible asset. *See* Kevin, V. Tu, *Perfecting Bitcoin*, 52 Ga. L. Rev. 505, 550 (2018)

(Bitcoin "is likely to be treated as a general intangible" under UCC Article 9); Kristin N. Johnson, Sarah E. Hsu Wilbur, and Stanley Sater, (Im)Perfect Regulation: Virtual Currency and Other Digital Assets as Collateral, 21 SMU Sci & Tech. L. Rev. 115, 131 (2018) ("Virtual assets are antithetical to tangible assets or physical resources.").  Star Harbor's claim for conversion of cryptocurrency therefore fails as a matter of law.

**VII.    The Court should dismiss Star Harbor's civil conspiracy claim (Count VII) under the intra-corporate conspiracy doctrine.**

Star Harbor's civil conspiracy claim fails as a matter of law because Star Harbor has alleged a conspiracy among putative members, agents, and directors of Wenlambo.  Pursuant to the intra-corporate conspiracy doctrine, "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy."  *Ziglar v. Abbasi*, 582 U.S. 120, 153, 137 S. Ct. 1843, 1867, 198 L. Ed. 2d 290 (2017).  This is because "a conspiracy requires an agreement between or among two or more separate persons to conduct an illicit act." *Insulet Corp. v. EOFlow Co.*, No. CV 23-11780-FDS, 2024 WL 4635197, at *97 (D. Mass. Oct. 31, 2024), *motion to certify appeal denied*, No. CV 23-11780-FDS, 2024 WL 5442419 (D. Mass. Nov. 1, 2024).  But where alleged co-conspirators act "within the scope of their duties as officers, employees, or agents" of an organization, their actions are imputed to the organization itself. *Hagenah v. Berkshire Cnty. ARC, Inc.*, No. 3:16-CV-30141-KAR, 2018 WL 907407, at *8 (D. Mass. Feb. 15, 2018).  They are not separate persons from the organization and therefore cannot, as a matter of law, conspire with the organization or with one another.  *Id.*

Throughout the Complaint, Star Harbor takes pains to allege that Shavell and HMSRSV acted on behalf of Wenlambo in their alleged dealings with Star Harbor.  (*See, e.g.*, Am. Compl. ¶¶ 19, 20, 23, 25, 27, 33, 34, 38, 42, 46, 52.)  Moreover, Star Harbor alleges that HMSRSV is "a Director of Wenlambo," (*Id.* ¶ 10), and that Shavell is "the co-founder, a shareholder, and a

Member of Wenlambo."  (*Id.* ¶ 11.)  *See Wentworth Precious Metals, LLC v. City of Everett*, No. CIV.A. 11-10909-DPW, 2013 WL 441094, at *14 (D. Mass. Feb. 4, 2013) (corporation cannot conspire with its officers).  Wenlambo "cannot conspire with itself," and the Court should therefore dismiss Star Harbor's civil conspiracy claim.  *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 131 (1st Cir. 2006).

## VIII.  Star Harbor's constructive trust (Claim X) and resulting trust (Count XI) claims are remedies, not causes of action.

The Court should dismiss Star Harbor's constructive trust and resulting trust claims because they are not causes of action.  Rather, "[a] constructive or resulting trust . . . [is an] equitable remed[y], applied where there is no stated intention to create a trust and where legal title to property is obtained by fraud, in violation of a fiduciary relationship . . . or where there was 'significant wrongdoing' by the party claiming title."  *Sutton v. Valois*, 66 Mass. App. Ct. 258, 266, 846 N.E.2d 1171, 1178 (2006); *see also In re Wojtkun*, 534 B.R. 435, 451 (Bankr. D. Mass. 2015) (collecting cases) ("A constructive trust is a remedy, not a substantive cause of action.") Because Star Harbor has failed to allege any facts establishing fraud, breach of fiduciary duty, or any other "significant wrongdoing" by any Defendant, it has not plausibly alleged entitlement to a resulting trust which is, anyways, a remedy, not a cause of action.  *See supra* Sections I-III, V-VI.

## IX.  The Complaint contains no theory as to how HMSRSV harmed Star Harbor.

HMSRSV appears only three times in the Complaint: once when reciting the parties, (Am. Compl. ¶ 10), and twice when alleging that all Defendants failed to discuss staking rewards with Star Harbor prior to the purchase of the Luna Tokens.  (*Id.* ¶¶ 25, 31.)  Star Harbor has alleged no specific actions by HMSRSV and has not provided any theory whatsoever for how HMSRSV's conduct harmed Star Harbor.  The Complaint does not state an actionable claim against HMSRSV, and the Court should dismiss it from this action.

**<u>CONCLUSION</u>**

Fraud is a grave allegation.  In recognition of this, the Federal Rules of Civil Procedure and the Public Securities Litigation Reform Act require a plaintiff alleging fraud to plead his case with particularity.  It is not enough to allege that some unnamed individual made vague promises that never came true.  Instead, a plaintiff must back up fraud allegations with specifics:  Who deceived him?  When and where did they communicate?  Through what medium?  Why was the statement deceptive?  A plaintiff who cannot allege these basic details cannot proceed to discovery.

Star Harbor has failed to plead any of its fraud allegations with particularity.  Its Complaint is based on vague allegations that *someone* promised its principal, Andrew Sudbury, that it would receive ancillary sums in addition to the capital gains on its investment.  But Star Harbor does not identify who made that promise, when or where it was made, or precisely what was said.  The Complaint falls far short of Rule 9(b) and the PSLRA, and the Court should dismiss it.

Similarly, Star Harbor has not alleged any facts from which the Court could plausibly determine that Star Harbor reached a meeting of the minds with any Defendant regarding the material terms of its purported contract, and all three contract claims therefore fail.

The remaining claims are futile attempts to find some way to pin liability to a Defendant.  Based on nothing more than legal conclusions, they all fail.  Star Harbor has not alleged how its simple investment converts a transactional relationship into a partnership.  The intra-corporate conspiracy doctrine blocks Star Harbor's civil conspiracy claim.  Conversion fails because cryptocurrencies such as Luna Tokens are not tangible property.  Finally, Star Harbor's trust claims are remedies, not causes of action.

The Federal Rules of Civil Procedure do not allow Star Harbor to sue a raft of defendants with a host of claims and use discovery to find the case it has not pled.  Accordingly, Defendants request that the Court dismiss Plaintiff's claims with prejudice.

Respectfully submitted,

Wenlambo Two Limited, LLC,
HMSRSV, LLC, and Robert Shavell

By their attorney,

*/s/ Matthew G. Lindenbaum*
Matthew G. Lindenbaum (BBO #670007)
matthew.lindenbaum@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(t) (617)-217-4700
Dated: April 28, 2025                              (f) (617) 217-4710

## CERTIFICATE OF SERVICE

I, Matthew G. Lindenbaum, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Dated: April 28, 2025                    */s/ Matthew G. Lindenbaum*
                                          Matthew G. Lindenbaum